**United States District Court**
**Northern District of Alabama**
**Southern Division**

03 JUN -4 AM 10: 09

DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| Sherry L. Thomas, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-01-CO-2289-S |
| Citation Corporation, | ] |
| Defendant(s). | ] |



ENTERED
JUN 0 4 2003

**Memorandum of Opinion**

I. **Introduction.**

Presently before the court is a motion for summary judgment, filed by the defendant on November 18, 2002. [Doc. # 33.] The issues raised therein have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, the court is of the opinion that the motion for summary judgment is due to be granted.

II. **Facts.**[1]

The plaintiff, Sherry L. Thomas ("Ms. Thomas"), an African-American female, worked for the defendant, Citation Corporation ("Citation"), from November 15, 1999, until October 17, 2000. She was initially hired as a secretary by Jim Ed Clayton ("Mr. Clayton"), a Caucasian male. As part of her duties as a secretary, Ms. Thomas was the back-up receptionist and was responsible for answering the phones between 4:30 and 5:30 p.m. and

---

[1] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



during the receptionist's lunch break. Because she had experience as the back-up receptionist, when the full-time receptionist left Citation on or about June 29, 2000, Ms. Thomas was transferred to that position. At that time, Mr. Clayton informed Ms. Thomas that it was important for her to be reliable and dependable in terms of attendance, as she would be solely responsible for answering the company's telephones.

On June 30, 2000, Ms. Thomas's first day in the receptionist position, she left work several hours early. The following week, Ms. Thomas took a vacation day on Monday, July 3, Tuesday, July 4, was a holiday, Ms. Thomas took sick days on Wednesday, July 5, and Thursday, July 6, and she appeared for work on Friday, July 7. The week after that, Ms. Thomas left work early on Thursday, July 13. She also left work early on Thursday, July 27, and Friday, July 28. Ms. Thomas took over two hours for lunch on Friday, August 4, Monday, August 7, and Friday, August 11.

On Sunday, August 20, 2000, Ms. Thomas was injured in a car accident. Although she worked the following week, from August 21 to August 25, 2000, she did not appear for work for the next three weeks (August 28, 2000 – September 18, 2000). On or about September 7, 2000, Mr. Clayton urged Ms. Thomas to return to work in some capacity and offered to accommodate any medical restrictions. Ms. Thomas returned to work on September 18, 2000, and she met with Mr. Clayton from approximately 4:30 to 5:10 p.m. that afternoon. During that meeting Mr. Clayton discussed and presented Ms. Thomas with a Job Performance Documentation ("JPD") that addressed perceived problems with her unreliable attendance. The JPD noted that since her hire date, Ms. Thomas had missed work on 20% of the days she was expected to work – an average of one day per week. The

JPD required Ms. Thomas to take no more than one sick day every two months, and to present a doctor's excuse for each sick day taken. Furthermore, the JPD noted how important Ms. Thomas's punctuality was, and required her to be in the office no later than 8:30 a.m. and to take no more than one hour for lunch. The JPD concluded "if you fail to live up to these standards, you will forfeit your employment." [Doc. # 32, at 5.]

After this meeting, Mr. Clayton documented that Ms. Thomas was tardy on Wednesday, October 11, Thursday, October 12, and Friday, October 13. Ms. Thomas reported that she was late on October 13 due to traffic. Mr. Clayton reminded her of the requirement that she be on time pursuant to the JPD. Notwithstanding this reminder, Ms. Thomas arrived late on Tuesday, October 17, again claiming that she was late due to traffic, and Mr. Clayton terminated her that day. Upon Ms. Thomas's discharge, the receptionist position was filled by Monica Sparks ("Ms. Sparks"), another African-American female.

Ms. Thomas filed for unemployment compensation benefits following her discharge from Citation. The Alabama Department of Industrial Relations ("ADIR") denied Ms. Thomas benefits, finding she was disqualified for unemployment compensation because she had been discharged for attendance related problems,[2] although she argued, through counsel, during all stages of the administrative process, that she was actually terminated because of her race. She appealed ADIR's decision to its appeals division, which held a hearing on the matter. Ms. Thomas was represented by counsel during the hearing and testified on her

---

[2] Under section 25-4-78(3)(b) of the Alabama Code, an employee will be denied unemployment compensation benefits "[i]f he was discharged from his most recent bona fide work for actual or threatened misconduct committed in connection with his work . . . repeated after previous warning to the individual." Ala. Code § 25-4-78(3)(b).

own behalf. The Administrative Hearing Officer affirmed the denial of benefits, finding Ms. Thomas was discharged from her employment with Citation for tardiness after prior warning. Ms. Thomas appealed this finding to the Circuit Court of Jefferson County, which held a trial in September 2001. Ms. Thomas was represented by counsel during this trial and presented testimony on her own behalf. Following trial, the court affirmed the denial of benefits, finding that Ms. Thomas was discharged from Citation as a result of her tardiness and attendance problems.

Ms. Thomas filed a charge of discrimination with the EEOC on October 20, 2000, claiming she was discriminated against on the basis of her race. A right-to-sue letter was mailed to Ms. Thomas by the EEOC on June 5, 2001, and she filed the instant lawsuit on September 10, 2001, alleging claims of race discrimination in discipline and discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, and 42 U.S.C. § 1981. Citation filed the instant motion for summary judgment on November 18, 2002. [Doc. # 33.]

**III.     Standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

**IV.    Discussion.**

Ms. Thomas raises race discrimination claims under both Title VII and § 1981. While it is true that employment discrimination claims brought under Title VII and § 1981 "have the same requirements of proof and use the same analytical framework," *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002), Title VII contains some administrative prerequisites to suit that do not apply to § 1981 cases. Therefore, the court will address Ms. Thomas's Title VII and § 1981 claims separately.

### A. Title VII claims.

Title VII actions may not be brought more than ninety days after a complainant has notice that the EEOC has dismissed the charge. *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000). Typically, this requires the plaintiff to establish that she filed her complaint within ninety days of receipt of the EEOC's right-to-sue letter. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). The plaintiff has the burden of establishing compliance with the ninety day filing requirement, and failure to establish compliance will result in dismissal of Title VII claims where the defendant establishes that the complaint was filed more than ninety days after the EEOC mailed the right-to-sue letter. *Green*, 281 F.3d at 1234.

In this case, the EEOC mailed the right-to-sue letter on June 5, 2001, but the plaintiff did not file her lawsuit until September 10, 2001, ninety-seven days later. Because Ms. Thomas cannot establish that she did not actually receive the right-to-sue letter until sometime within the ninety days preceding September 10, 2001, she has failed to satisfy her burden of establishing that she filed suit within the ninety day filing period. *See Green*, 281 F.3d at 1234. As such, summary judgment is due to be granted as to her Title VII claims.

### B. Section 1981 claims.

Although in her complaint, Ms. Thomas stated race discrimination claims based on work assignments, discipline, and discharge, in her opposition to the motion for summary judgment, Ms. Thomas briefed only the claims based on disparate discipline (with respect to her receipt of the JPD) and discriminatory discharge. Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," *Resolution*

*Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), the court will discuss the disparate discipline and discriminatory discharge claims – and only those claims – in turn.

### 1. Disparate discipline.

Ms. Thomas alleges that she was disciplined more harshly for her attendance problems than similarly situated white employees, and that this difference in treatment was based on her race. Specifically, she contends that her receipt of the JPD constitutes an adverse employment action, and that white employees who had similar attendance problems were not presented with a JPD. To prevail on this claim, Ms. Thomas must establish that Citation intentionally discriminated against her with respect to discipline.

"Whether an employer intentionally discriminated against an employee . . . is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). Because Ms. Thomas has not alleged any facts to support a direct evidence case, she must prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* analysis, the plaintiff creates a rebuttable presumption of discrimination by proving a prima facie case of discrimination, which consists of proof that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action in the form of discipline; and (4) a similarly situated employee outside the protected class who engaged in the same or similar misconduct was not disciplined similarly. *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1336 (11th Cir. 2000) (citations omitted). The defendant can rebut the presumption of

discrimination by producing evidence of a legitimate, non-discriminatory reason for the challenged employment action. *Alexander*, 207 F.3d at 1336. Once the presumption is rebutted, the defendant is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable factfinder could conclude that the reason articulated by the defendant is mere pretext for discrimination. *Id.*

It is clear that Ms. Thomas can establish the first two elements of her prima facie case – she is an African-American, placing her in a protected class, and she was qualified for the job of receptionist. However, as a matter of law, Ms. Thomas cannot establish that her receipt of the JPD constitutes a disciplinary adverse employment action sufficient to trigger liability under § 1981. The Eleventh Circuit has held that to qualify as an adverse employment action, the employer's action "must at least have a tangible adverse effect on the plaintiff's employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Moreover, the plaintiff must demonstrate "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239 (emphasis in original). The JPD in this case simply did not result in any effect on Ms. Thomas's employment, much less a tangible adverse effect. Rather, as in *Davis*, the JPD "was a 'counseling memorandum' expressing concern and criticism . . . over one aspect of [Ms. Thomas's] performance." *Id.* at 1240. *See also Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) ("Negative performance evaluations, standing alone, do not constitute adverse employment action[s]."). The court concludes that the issuance of the JPD, like the issuance of the counseling memorandum in *Davis*, is simply not an adverse employment action sufficient to trigger § 1981 liability. As such, Ms. Thomas cannot establish a prima

facie case of discrimination with respect to her disparate discipline claim, and summary judgment as to that claim is therefore proper.

### 2. Discriminatory discharge.

Ms. Thomas's remaining § 1981 claim is premised on her allegation that she was discharged from Citation because of her race. Citation argues that Ms. Thomas is collaterally estopped from relitigating the issue of the reason for her termination, which it claims has been decided by ADIR and the Circuit Court of Jefferson County.

"[C]ollateral estoppel precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998). In the Eleventh Circuit, "a state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if: (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). *See also Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1359 n.1 (11th Cir. 2000) ("[28 U.S.C. § 1738] requires 'a federal court to give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'") (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Given that Ms. Thomas was represented by counsel at every stage in the administrative and state-court proceedings, and there are no allegations that those proceedings were somehow lacking in due process, the court concludes that the administrative and state-court proceedings comported with the requirements of due process. Therefore, the court must ascertain

whether an Alabama state court would give preclusive effect to the decision of ADIR, as affirmed by the Circuit Court of Jefferson County, under these circumstances.

Collateral estoppel will bar relitigation of an issue when the following elements are present:

> (1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999) (citations omitted). In *Smitherman*, the Alabama Supreme Court applied the foregoing elements to a case in which the plaintiff, who had previously been denied unemployment compensation based on a finding by the appropriate administrative agency that she was discharged "for using profanity and/or abusive language on the job," sued her employer for retaliatory discharge under Alabama's worker's compensation law. *Smitherman*, 743 So. 2d at 444. The court concluded that the administrative determination that she was discharged for the use of profanity collaterally estopped her from arguing that she was terminated in retaliation for filing a worker's compensation claim. *Id.* at 448. Applying the reasoning of the Alabama Supreme Court in *Smitherman*, a case that is indistinguishable in all material respects from the instant action, the court is of the opinion that an Alabama state court would hold that Ms. Thomas is collaterally estopped from relitigating the reason for her discharge.

There is no dispute that the parties to the instant lawsuit were both involved in the administrative process; thus, the first requirement for collateral estoppel is met. *See*

*Smitherman*, 743 So. 2d at 445. Likewise, the issue to be estopped in this case – the reason for Ms. Thomas's discharge – is identical to the issue involved in the administrative proceedings. *See id.* at 446; *see also Rigby v. Marshall*, 134 F. Supp. 2d 1259, 1262 (M.D. Ala. 2000) (applying *Smitherman*). Furthermore the court is satisfied that Ms. Thomas had an adequate opportunity to litigate the issue to be estopped in the administrative proceedings; she was represented by counsel at all times, and she was afforded a hearing before the appeals referee as well as a trial before the Circuit Court of Jefferson County. *See Smitherman*, 743 So. 2d at 446-47; *Rigby*, 134 F. Supp. 2d at 1263.

As to the fourth requirement, the issue to be estopped – the reason for Ms. Thomas's termination – was actually litigated in the administrative proceeding and was actually determined by the appeals referee, who concluded that she was discharged for attendance problems. *Smitherman*, 743 So. 2d at 447; *Rigby*, 134 F. Supp. 2d at 1263. Finally, as in *Smitherman*, the findings on the issue to be estopped were necessary to the administrative decision. "The appeals referee's finding regarding the reason for [Ms. Thomas's] discharge was necessary to the determination of whether [she] was entitled to unemployment compensation benefits." *Smitherman*, 743 So. 2d at 447. Based on the reasoning of the Alabama Supreme Court in *Smitherman*, the court is of the opinion that a court in Alabama would have no choice but to hold that collateral estoppel bars Ms. Thomas from relitigating the reason for her discharge. As such, the court must conclude that collateral estoppel

applies, and that Citation's motion for summary judgment is therefore due to be granted as to the § 1981 claim for discriminatory discharge.[3]

## V. Conclusion.

For the foregoing reasons, the court is of the opinion that the defendant's motion for summary judgment is due to be granted in all respects. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 3d of June, 2003.

L. Scott Coogler
United States District Judge

---

[3] Moreover, assuming that collateral estoppel did not apply, the court is of the opinion that Ms. Thomas's discriminatory claim would not survive summary judgment in any event, given that she was hired and fired by the same individual, see *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438 (11th Cir. 1998), she was replaced by an African-American, and she can adduce no evidence of similarly situated white employees receiving better treatment for similar misconduct.